IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 22-cv-01275-NYW-SKC

CROWNALYTICS, LLC,

    Plaintiff,

v.

SPINS LLC,
DAAP, LLC, and
INFORMATION RESOURCES, INC.,

    Defendants.

## ORDER ON MOTION TO AMEND

This matter is before the Court on Plaintiff's Motion for Leave to File Amended Complaint (the "Motion" or "Motion to Amend") filed on May 30, 2023. [Doc. 93]. Defendants SPINS LLC and DAAP, LLC (collectively, "SPINS") responded in opposition to the Motion, [Doc. 102],[1] and Plaintiff has replied. [Doc. 105]. For the reasons set forth herein, the Motion to Amend is respectfully **DENIED**.

### BACKGROUND

This Court set out the factual background of this case in detail in a prior Order, *see* [Doc. 86 at 2–6], and restates it here only as necessary to rule on the instant Motion. This case revolves around data and data analytics in the market of natural and organic consumer packaged goods ("NOCPG"). [Doc. 92 at ¶ 4]. Defendants SPINS and Information Resources, Inc. ("IRI") are "two of the three competitors in the market for the sale of retail tracking data relevant to NOCPG

---

[1] Defendant IRI filed a "Notice of Joinder" in SPINS's opposition to the Motion to Amend. [Doc. 103].

manufacturers" and have each "developed massive databases that are highly relevant to NOCPG customers." [*Id.* at ¶¶ 6–8, 24]. Plaintiff Crownalytics, LLC ("Plaintiff" or "Crownalytics") is a "data-agnostic analytics and insights consulting company" in the NOCPG data analytics market and provides data analytics services to NOCPG manufacturers. [*Id.* at ¶¶ 4, 9].

Plaintiff alleges that in the three-supplier NOCPG data market, SPINS and IRI "decided to forgo competition and instead entered an agreement to combine and coordinate the sale and provision of their competing data sets," offering a "bundle" product containing both IRI and SPINS data. [*Id.* at ¶ 12]. Plaintiff also alleges that, in the middle of 2021, "both IRI and SPINS suddenly and simultaneously moved to restrict third-party data analytics services providers'—including Crownalytics's—access to their databases." [*Id.* at ¶ 53]. Then, in April 2022, Crownalytics was informed by letter from SPINS that it would be barred from accessing SPINS or IRI data, [*id.* at ¶ 88], and SPINS terminated Crownalytics's access to that data on June 1, 2022. [*Id.* at ¶ 91]. Plaintiff alleges that Defendants' conduct is coordinated and anticompetitive and has lessened competition in the data analytics market by coercing customers to no longer use Crownalytics's services and by creating barriers to new competition in the market. [*Id.* at ¶¶ 93–100].

Plaintiff initiated this lawsuit on May 23, 2022, asserting ten claims for relief: (1) a group boycott claim under § 1 of the Sherman Act against all Defendants; (2) a unilateral refusal to deal claim under § 2 of the Sherman Act against SPINS; (3) a unilateral refusal to deal claim under § 2 of the Sherman Act against IRI; (4) a tying claim under §§ 1 and 2 of the Sherman Act against all Defendants; (5) a conspiracy to monopolize claim under § 2 of the Sherman Act against all Defendants; (6) a group boycott and concerted refusal to deal claim under the Colorado Antitrust Act ("CAA") against all Defendants; (7) a unilateral refusal to deal claim under the CAA against SPINS and IRI; (8) a tying claim under the CAA against all Defendants; (9) a claim for tortious

2

interference with existing and prospective business relationships against SPINS; and (10) a breach of contract claim against SPINS. *See* [Doc. 1 at ¶¶ 88–194]. SPINS and IRI filed separate motions to dismiss under Rule 12(b)(6), [Doc. 40; Doc. 42], which were referred to the Honorable S. Kato Crews. [Doc. 43]. Judge Crews recommended that each motion to dismiss be granted in part and denied in part. [Doc. 74 at 23]. Both SPINS and IRI objected to Judge Crews's Recommendation, *see* [Doc. 77; Doc. 78], but Plaintiff did not object.

This Court adopted Judge Crews's Recommendation in part. First, the Court agreed with Judge Crews's Recommendation insofar as it recommended that Plaintiff's refusal to deal claims and tortious interference claims be dismissed, noting that Plaintiff had not objected to Judge Crews's recommendation of dismissal with respect to those claims. [Doc. 86 at 6]. The Court also concluded that Plaintiff's group boycott claims and conspiracy to monopolize claim failed to allege sufficient facts plausibly establishing an unlawful agreement between SPINS and IRI and dismissed those claims without prejudice. [*Id.* at 9–16]. However, the Court *sua sponte* granted Plaintiff leave to file an amended complaint—only with respect to the group boycott and conspiracy to monopolize claims (then referred to as Claims One, Five, and Six)—within 21 days of the Court's Order. [*Id.* at 27]. The Court denied the motions to dismiss in all other respects. [*Id.* at 16–26].

After requesting and obtaining an extension of time, *see* [Doc. 89; Doc. 90], Plaintiff filed a First Amended Complaint on May 30, 2023. [Doc. 92]. Crownalytics now asserts six claims: (1) a group boycott claim under § 1 of the Sherman Act against all Defendants; (2) a tying claim under §§ 1 and 2 of the Sherman Act against all Defendants; (3) a conspiracy to monopolize claim under § 2 of the Sherman Act against all Defendants; (4) a group boycott and concerted refusal to

3

deal claim under the CAA against all Defendants; (5) a tying claim under the CAA against all Defendants; and (6) a breach of contract claim against SPINS.  [*Id.* at ¶¶ 106–72].

Simultaneously with the First Amended Complaint, Plaintiff filed the instant Motion to Amend.  [Doc. 93].  Therein, Plaintiff seeks leave to assert six new claims, all against SPINS: (a) two claims of monopolization, one arising under § 2 of the Sherman Act and one arising under the CAA; (b) two claims of attempted monopolization, one under § 2 of the Sherman Act and the other under CAA; and (c) two claims of monopoly leveraging, one under § 2 of the Sherman Act and one under the CAA.  *See* [Doc. 93-2 at 38–43].  Crownalytics contends that its proposed amendment "is based on new information and developments that have occurred since Crownalytics filed its initial complaint" and that Crownalytics "could not have asserted these [new] monopolization claims at the time it filed its complaint because the conduct and its effects had not yet been fully realized."  [Doc. 93 at 2].  SPINS opposes the Motion to Amend, arguing that Crownalytics has failed to sufficiently identify the new information it learned that purportedly supports the requested amendment and has failed to explain why it could not have met the deadline to amend pleadings despite diligent efforts.  [Doc. 102 at 4–5].

**LEGAL STANDARD**

When a party files a motion to amend after the expiration of the deadline for amendment of pleadings, the Court considers the motion pursuant to both Rules 15 and 16 of the Federal Rules of Civil Procedure.  First, the Court considers whether the moving party has demonstrated good cause to amend the Scheduling Order pursuant to Rule 16(b).  *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Assoc.*, 771 F.3d 1230, 1242 (10th Cir. 2014); *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1518 (10th Cir. 1990).  Then, the Court weighs whether the amendment should be allowed under Rule 15(a).  *Gorsuch*, 771 F.3d at 1242.

4

Rule 16(b) provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "In practice, this standard requires the movant to show the 'scheduling deadlines cannot be met despite [the movant's] diligent efforts.'" *Gorsuch*, 771 F.3d at 1240 (quoting *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001) (alteration in original)). This burden is satisfied when, for example, a party learns of new information through discovery, or when the governing law has changed. *Id.* "Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment." *Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000).

In contrast, Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Court may refuse leave to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). A general presumption exists in favor of allowing a party to amend its pleadings, *see Foman v. Davis*, 371 U.S. 178, 182 (1962), and the non-moving party bears the burden of showing that the proposed amendment is improper. *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Inv. Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999). Whether to allow amendment is within the trial court's discretion. *Burks v. Okla. Publ'g Co.*, 81 F.3d 975, 978–79 (10th Cir. 1996); *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 330 (1971).

## ANALYSIS

The deadline to amend pleadings in this case was March 3, 2023. [Doc. 72 at 1]. Thus, the Court must determine whether Crownalytics has demonstrated good cause to amend the Scheduling Order under Rule 16(b)(4). *Gorsuch*, 771 F.3d at 1242. Crownalytics argues that good

5

cause exists to amend the Scheduling Order because its proposed amendment "is based on new information and developments in the Data Analytics Market," namely, "SPINS's efforts to monopolize the Data Analytics Market." [Doc. 93 at 2–3]. Plaintiff contends that "[m]uch of this conduct and its dramatic effects had not occurred when [it] filed its original complaint in April 2022 [sic],"[2] as "[a]t that time, Crownalytics had not yet been fully excluded from the Data Analytics Market" [*Id.* at 3]. But according to Plaintiff, "after June 1, 2022—when Defendants formally barred Crownalytics and other third-party analytics providers from working with customers who brought Defendants' data—Crownalytics saw its market share drop to essentially zero," while SPINS's market share has dramatically increased. [*Id.*]. Crownalytics maintains that it "could not have asserted [the new] monopolization claims at the time it filed its original complaint because the conduct and its effects had not yet been fully realized." [*Id.* at 4].

        Critically missing from Plaintiff's Motion, however, is what *specific* information it discovered that forms the basis of the proposed amendment and *when* Plaintiff learned this new information. Generalized references to SPINS's "conduct" and a brief mention of SPINS's increased market share are insufficient to inform the Court of the specific new information it contends forms the basis of the new proposed claims. *See Bauer v. Crete Carriers Corp.*, No. 18-cv-01536-PAB-SKC, 2019 WL 7290939, at *5 (D. Colo. Nov. 1, 2019) (finding that moving parties did not demonstrate good cause for late amendment when they did not "elucidate on what it is they learned or when."). Moreover, the "good cause" provision in Rule 16 "requires the moving party to show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay." *Strope v. Collins*, 315 F. App'x 57, 61 (10th Cir. 2009) (quotation omitted). This requires the moving party to show that it acted diligently in

---

[2] Plaintiff filed its Complaint on May 23, 2022. [Doc. 1].

seeking amendment once it learned of the new information purportedly giving rise to the amendment. *See Farr v. Jackson Nat'l Life Ins. Co.*, No. 19-4095-SAC-ADM, 2020 WL 5118068, at *1 (D. Kan. Aug. 31, 2020) ("A party does not demonstrate good cause to modify a scheduling order to accommodate an otherwise untimely motion to amend by simply pointing to information learned after that deadline. Rather, the party must also show it acted diligently in moving to amend once it learned of this new information."); *Fountain Valley Inv. Partners, LLC v. Cont'l W. Ins. Co.*, No. 14-cv-01906-MSK-NYW, 2015 WL 7770772, at *2 (D. Colo. Dec. 3, 2015) (recognizing that the relevant question is "when the Plaintiff first learned of new information that it sought to include in its pleadings" and explaining that if "the deadline for amendment ha[s] already passed, it [is] incumbent upon the Plaintiff to alert the court of its need to amend as soon as possible after learning the new information.")]. And the Court was express, in its Order dated April 25, 2023, that it was limiting its leave to amend to Claims One, Five, and/or Six—not granting general leave to amend with new claims. [Doc. 86 at 26–28].

The issues arising from Plaintiff's lack of specificity are compounded by a review of the proposed Second Amended Complaint [Doc. 93-1; Doc. 93-2 (red-lined version)] in comparison to the original Complaint [Doc. 1]. In the proposed Second Amended Complaint, Plaintiff seeks to add new paragraphs discussing SPINS's "monopolization of and reasonable probability of success in monopolizing the data analytics market" by "tying its sale of data products to sales of its data analytics services" and "threaten[ing] to" and "refus[ing] to sell its data products to customers who hired Crownalytics or other third-party analytics providers for data analytics services." [Doc. 93-2 at ¶¶ 93, 96–97, 99–101]. The proposed new monopoly-related claims appear to be based on this alleged conduct. *See, e.g.*, [*id.* at ¶¶ 171–173, 180, 188, 190, 200, 203, 206]. But the original Complaint raises these same, or at least substantially similar, allegations.

7

*See, e.g.*, [Doc. 1 at ¶ 65 ("[O]nly customers who agree to use SPINS's data analytics services—as opposed to those of a third party—could avoid [an alleged] degradation in data access and increase in data analysis cost."); *id.* at ¶ 73 ("SPINS informed Crownalytics's current, past, and potential customers that, 'as of June 1, 2022, Crownalytics will no longer have access to any data from SPINS. . . . If you use Crownalytics with SPINS data, you will need to obtain a new analytics solution." (omission in original and emphasis omitted)); *id.* at ¶ 138 ("SPINS and IRI agreed with each other only to sell their data in the NOCPG Data Market to customers who also retained SPINS to provide data analytics services in the Data Analytics Market."); *id.* at ¶ 152 ("Defendants agreed to bar Crownalytics and other rivals from accessing their data for the sole purpose of monopolizing the Data Analytics Market.")].  In other words, the proposed new claims are based on alleged conduct that Crownalytics has been aware of since the beginning of this lawsuit, which weighs against a finding of good cause.  *See Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1020 (10th Cir. 2018) ("Because Rule 16 requires diligence, B55 and Mr. McArthur cannot establish good cause if B55 knew of the underlying conduct but simply failed to raise its claims." (quotation and brackets omitted)).

As best as the Court can ascertain, the only "new" information forming the basis of Plaintiff's proposed amendment is the fact that SPINS now allegedly controls 60 percent or more of the data analytics market and Crownalytics's market share has fallen "to essentially zero."  *See* [Doc. 93 at 3].  But as mentioned above, Plaintiff fails to explain when these shifts in market share occurred, *see generally* [*id.*]; *but see* [Doc. 93-2 at ¶ 189 (Plaintiff alleging in the proposed Second Amended Complaint that SPINS "quickly captur[ed] more than sixty percent" of the data analytics market)], and fails to explain why it could not have asserted the proposed monopolization claims at an earlier time in this case.  "Monopoly power is *both* 'the power to control prices and power to

8

exclude competition.'"  *GDHI Mktg. LLC v. Antsel Mktg. LLC*, 416 F. Supp. 3d 1189, 1203 (D. Colo. 2019) (quoting *Full Draw Prods. v. Easton Sports, Inc.*, 182 F.3d 745, 757 (10th Cir. 1999) (emphasis in original)).  The original Complaint contains allegations that SPINS dominated the market share and had the power to control prices and power to exclude competition.  *See, e.g.*, [Doc. 1 at ¶ 13 ("SPINS by itself has sufficient market power in the NOCPG Data Market to foreclose competition in the downstream Data Analytics Market."); *id.* at ¶ 30 ("The vast majority of customers in the NOCPG Data Market (eighty percent) purchase the SPINS Bundle."); *id.* at ¶ 77 ("Defendants have wielded their market power in the NOCPG Data Market to limit customers' choices in the Data Analytics Market to only one: SPINS."); *id.* at ¶ 79 ("Defendants' actions, collectively and individually, have lessened competition in the Data Analytics Market by limiting consumer choice, increasing prices of the affected services and offerings, and reducing the quality of those outputs."); *id.* at ¶ 81 ("[Competitors] will be unable to prevent Defendants from imposing supracompetitive pricing because Defendants know that their customers cannot switch to a substitute."); *id.* at ¶ 85 n.8 ("Presumably, Defendants' conduct will stifle all other remaining competitors shortly, to the extent it has not already done so."); *id.* at ¶ 87 ("When the final restraints on Crownalytics's access to data become effective, on June 1, 2022, Crownalytics will be completely excluded from the marketplace.")].  Thus, it is not clear to the Court why these claims could not have been asserted substantially sooner than May 2023, and Plaintiff does not clear up this uncertainty in its Motion.

On the same note, although Crownalytics insists that it could not have asserted these claims in the original Complaint, the relevant inquiry in determining whether good cause exists to amend the Scheduling Order is not whether Plaintiff could have asserted the claims in the original pleading, but whether Plaintiff can show that it acted diligently in moving to amend after it learned

9

of purportedly new information. *Fountain Valley*, 2015 WL 7770772, at *2. Plaintiff does not explain why, after it was allegedly excluded from the market after June 1, 2022, it could not have moved to amend its Complaint in the nine months between that date and the date it ultimately filed its Motion to Amend.[3] *See generally* [Doc. 93]. Notably, Plaintiff highlights in its Reply that it "specifically requested leave to amend" in its response to the motions to dismiss, "noting that it could add facts regarding the effect of the restraints." [Doc. 105 at 3 (quotation omitted)]; *see also* [Doc. 51 at 34 ("Crownalytics filed its complaint before Defendants' restraint became effective, *and it now has additional factual information it could add to the allegations regarding the effect of the restraints*.") (emphasis added)]. But this Court has already explained that a request to amend contained in a response brief is procedurally improper, *see* [Doc. 86 at 26–27], and the fact that Plaintiff has acknowledged that it had additional information "regarding the effect of the restraints" as early as August 12, 2022 hinders, rather than helps, Plaintiff's argument.

Finally, to the extent that Plaintiff suggests it could not have sought leave to amend while the motions to dismiss were pending, *see* [Doc. 93 at 3; Doc. 105 at 3–4], or that "an earlier amendment would have resulted in unnecessary and duplicative efforts and a significant waste of judicial resources," [Doc. 105 at 4], the Court respectfully disagrees. Litigants routinely move to amend their pleadings while motions to dismiss are pending. And if Plaintiff is correct that its proposed new claims do not seek to simply re-assert its previously dismissed refusal to deal claims but instead assert entirely new claims, *see* [Doc. 93-2 at ¶ 104 ("Crownalytics is not seeking to invoke the refusal to deal with a rival antitrust doctrine. Nor is it seeking to renew the refusal to

---

[3] The Court notes that the motions to dismiss were filed on July 8, 2022, *see* [Doc. 40; Doc. 42], and as a result, Plaintiff had the opportunity to file an amended pleading as a matter of right (i.e., without obtaining leave of Court or consent of Defendants) through July 29, 2022. *See* Fed. R. Civ. P. 15(a)(1)(B) ("A party may amend its pleading once as a matter of course within . . . 21 days after service of a motion under Rule 12(b).").

10

deal claims that it had asserted in its initial Complaint. Instead, Crownalytics, among other claims, is alleging that SPINS, which has monopoly power in the Data and Data Analytics Markets, is refusing to sell to customers that hire Crownalytics or other third-party analytics providers.") (citation omitted)],[4] it would have been more efficient for Crownalytics to move to amend its pleading prior to resolution of the motions to dismiss, so all of the Parties' arguments in support of or against all potential claims in this case could be resolved together.

For all of these reasons, the Court concludes that Plaintiff has not met its burden of demonstrating good cause to amend the Scheduling Order under Rule 16, and the Court need not address the Parties' arguments under Rule 15. *See Gorsuch*, 771 F.3d at 1242 ("Having concluded [the movants] lacked good cause to amend their pleadings after the scheduling order deadline, we need not reach the Rule 15(a) issue, and decline to do so."); *Colo. Visionary Acad.*, 194 F.R.D. at 688 (denying motion to amend on the basis of a failure to establish "good cause" under Rule 16(b)(4)); *Perez v. Denver Fire Dep't*, 243 F. Supp. 3d 1186, 1199 (D. Colo. 2017), *aff'd*, 724 F. App'x 646 (10th Cir. 2018) ("[T]he application of Rule 16(b)'s good-cause standard is not optional.") (quotation omitted). As a result, the Motion to Amend is respectfully **DENIED**.

---

[4] The Court again notes that the original Complaint contains these same allegations. *See* [Doc. 1 at ¶ 138 ("SPINS and IRI agreed with each other only to sell their data in the NOCPG Data Market to customers who also retained SPINS to provide data analytics services in the Data Analytics Market.")].

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1)   Plaintiff's Motion for Leave to File Amended Complaint [Doc. 93] is **DENIED**.

DATED:  August 30, 2023

BY THE COURT:

_____
Nina Y. Wang
United States District Judge